I hear the last case on our day calendar, Hampshire Recreation, LLC, et al. versus the Village of Mimarinik. Thank you. May it please the court, my name is David Cooper from the law firm of Zarin and Steinmetz, representing the appellants in this matter, Hampshire Recreation, LLC, and Hampshire Club, Inc. This is an appeal of a decision granting a motion to dismiss of claims under Section 1983, specifically a dismissal of an equal protection claim as well as a First Amendment claim. In both instances, we respectfully submit that the district court failed to properly apply the plausibility standard. Under that standard, if there are facts alleged in the complaint which permit one to draw a reasonable inference that misconduct occurred, a motion to dismiss is improper. The district court was convinced that temporal proximity or the lack of it doomed your case. Tell me why that isn't true. Well, the theory here, Your Honor, of retaliation is that the pursuit of the zoning petition by Hampshire set off a movement in the village where the village board, in collusion with this coalition that formed right after it was announced, engaged in a, quote, general pattern of egregious behavior, I'm quoting the Doherty matter, with the intent to stop the pursuit of that application. The evidence that that conduct was linked to the petition and the conduct that we're citing is obviously alleged in the brief as the notices of violation, seeking injunctions, refusing to speak with the representatives of Hampshire, executive sessions, and then ultimately refusing to even consider the application. One is the timing. Hampshire Recreation, or Hampshire, purchased the club in 2010. And until they announced their pursuit of the zoning, no complaints were ever filed. There are amicable relations. Upon that announcement, the coalition forms. And suddenly, complaints are occurring. And essentially, the coalition provides a roadmap to the village how to prevent Hampshire from pursuing this. When they say issue violations, cease and desist orders, in the record, under A532 and then 538, there are various letters from the coalition's attorney essentially telling the village, hey, this is how you can stop Hampshire from pursuing this. So is your argument about lack of temporal proximity is that this was ongoing? That's correct, Your Honor. And the causal nexus analysis is a contextual analysis. As this court found in the Doherty matter, where there are circumstantial evidence which would lead the reasonable inference or lead to the reasonable inference that the retaliation is in fact linked to the exercise of the First Amendment right. In that case, it was five years of egregious treatment alleged in the complaint. That's sufficient under the plausibility standard to survive a motion to dismiss. What exactly is the injury that you're seeking all this money to address? Well, partially the injury, the $54 million was under the takings claim. $54 million? Million, million, under the takings claim. So explain to me how you experienced this $54 million worth of- Well, in preventing Hampshire from seeking any development options for the site. As we allege in the complaint that the refusal to rezone the property essentially depressed the value of this site. Because the current use of the site, the club use of the site, was insufficient to provide enough revenue to keep this use going. The owner of the site was going to need to introduce some other type of use to allow for additional revenue. By refusing to consider the rezoning, and obviously the village recognized this when it enacted its comprehensive plan just months before Hampshire actually submitted or made clear that they were going to pursue this zoning petition. That rezoning option should be considered. It would be appropriate to consider it because of what's going on at the club. I submit that- Have you gotten rezoning? No, not at this time. No, I think frankly the filing of the lawsuit showed that should something like that occur, there would be further litigation. But there were threats that should we pursue a as of right application that it would end up ultimately in a conservation zoning. The causal nexus and also the motive under the equal protection prong in terms of what was the intent here. Is that rather than engaging in a meaningful discussion as to what should occur at this site. Future development options. The village in collusion with this opposition group, this small but vocal opposition group. Which as this court probably remembers is not the first time that a small but vocal opposition group has gotten the village of Maranac into trouble. I'm referring to the Westchester Day School case. Where the village instead of following legitimate government purposes. For example, here following or carrying out their comprehensive plan capitulates to pressure. And then shuts down the process. Doesn't allow Hampshire to pursue its development. Doesn't even meet with Hampshire anymore. Results in executive sessions to stop Hampshire from even advocating for their position. What the court below found was that there was no plausible connection between those acts and the theory. What I would respectfully submit is that at a motion to dismiss stage. Particularly when the facts are viewed in a light most favorable to the plaintiff. A reasonable person could infer that the trigger of these events was the pursuit of this rezoning. And I see my time is up. I think I'm going to reserve two more minutes. You can talk until it gets read. Oh, sorry. I'm sorry. I was getting my. And so the dismissal of the complaint at this point. I respectfully missed a lot of the allegations in the complaint. They weren't conclusory allegations. There were clear objective facts as to laying out how we believe we're going to be able to establish. That the acts that occurred were because of the submission of the zoning. Also, quickly on the issue of similarly situated. I believe what the court, the district court missed was that the issue here are the impacts. All of the clubs are operating non-member events. And that's what the regulation, the non-member event regulation was aimed at. Ensuring that the impacts associated with those events are mitigated. Noise, traffic, parking, et cetera. The events that occurred at Hampshire are substantially similar. Certainly under selective enforcement theory to the events that were occurring at all the other clubs. The court below found that because there was a split zone and there was a CEA or environmental sensitivity portion of the site. That it was distinct. But those factors don't impact the type of use or the type of events. The non-member events are occurring on all of these clubs' properties. Whether it's in one zone or the other. The impacts are the same. And that's really what drives the analysis. So, I think what I'll do is unless there are any other questions. I see my time is almost up now. So, I'll reserve. We'll have extra time. All right. Thank you. Good afternoon. May it please the court. My name is Ed Granger. To start with Judge Parker, I'd like to answer the question you asked of counsel with respect to money damages. That claim is not under appeal. Counsel indicated that it was the taking claim. That was the third cause of action. It's not under appeal. Only the first two causes of action for equal protection and First Amendment retaliation are under appeal. Counsel, can I ask you? Oh, I'm sorry. You can answer, Judge Parker. Thank you. I'll get right back to you. Okay. The second is, did they submit a rezoning plan? Yes, they did. They submitted a plan to the planning board. That is an as of right plan. It is being actively pursued as far as the planning board is concerned. The next step is the FEIS. Over one year has passed, and we've heard nothing from Hampshire with respect to that plan. It's their obligation to submit the plan, and they have done nothing with respect to that. And those are the two questions. Okay. I'd like to talk about the First Amendment retaliation, and I turn your attention to the first enforcement ticket, which was for a nonmember event on September 27th, 2013. In a different proceeding, the official who prepared the citation stated that he had not witnessed or investigated any event on September 27th that formed the basis of the citation. Instead, he said that he was instructed by the building inspector of one of the recipients of the coalition's letter to investigate the club. That makes it sound that the citation was pretextual because of the lack of investigation supporting it. Tell me why I'm wrong about that. Judge, there was never a trial with respect to the NOV. There was a plea by Hampshire for one of the allegations in that. The investigation, Mr. Scirocco, the fire inspector, did not conduct. No question about that, but he did speak to other people who knew of the event. These were public events. Sounds like hearsay to me. Would you be able to get that into a trial? In terms of issuing the notice of violation, that's proper, Judge. If he was the only one who testified at trial, and we had a trial, and there presumably would be an objection for hearsay, probably the village would lose on that issue. But that wasn't the stage that we were at. We were only at the issuing of the violation, and certainly that can be done based on hearsay, and it was. What about the argument that the citation was issued because of the coalition's pressure on the building inspector who suggested that that first violation be issued? Judge, there's certainly no evidence of that, and keep in mind that the First Amendment claim that the appellant here refers to is a submission to the village board, not to the planning board, in 2014, and the chilling that they allege is something that happened in 2013. If they were so chilled, why did they submit not one but two rezoning plans to the village? Why did they plead guilty to the notice of violation? Why did they agree in the Supreme Court injunctive action that they would not schedule nonmember events pending the proper application to the ZBA, which they did and which special permit was granted to them? If anyone in this case, in any case, was chilled less than Hampshire, I don't know who it is, frankly. They have been actively... Before the first enforcement action in 2013, the coalition's lawyers had been increasingly insistent that some enforcement take place. So that's the order that I understand it. There was this barrage of letters from the coalition to the town and the village board, and in that sense, they started these enforcement actions. So it seems to me that they are closer temporally and not in reverse order. Well, they're certainly in reverse order chronologically, but the village did not agree with the coalition on every issue. We opposed the coalition on their Article 78 with respect to the issuance of the special permit, and the Supreme Court affirmed the issuance of the special permit that the village granted to Hampshire. So neighbors coming and petitioning the government certainly is a proper act. They're entitled to do that. But I don't think that in this case the village cowered and said, oh, okay, we agree with you because we opposed them in other issues. The village did not want a five-story building in a critically environmentally sensitive area right on the wetlands of Long Island Sound. Sound residential, wasn't it? Judge, there's about three residences along this road. It's all marshland. It's all open land. There's a golf course that covers over 100 acres. It was zoned residential, wasn't it? It was zoned R-20. That's correct. And the plan that they have asked for is a plan that they're entitled to submit as of right, and nothing can be done until they submit the EIS. So is this still pending? This issue is still pending? It is still pending, the plan. We've waited over a year for them to get the EIS. They haven't done it. That's their obligation. What's your explanation for all of this? Why have they not? I mean, you must have a theory as to what your opposition is up to. Do you have a theory, even off the record? Even off the record, talking with counsel who I've known for a while and we get along with well, I have no idea why they are doing that. That's something that they have not expressed even indirectly. They should be doing it. Counsel for the planning board is here. They haven't expressed anything to him. I spoke with him earlier today about just that issue. I don't have a theory for them. Counsel, do you believe that the club had existed and conducted similar operations, including nonmember events, for 90 years before September 2013? No, Judge. This club was only formed. They bought the property in 2010. They were formed in 2013. But this space existed. They took over a failing club. They took over a failing club, and the club was closed for approximately a year, a little bit more than that. There's a draft of a letter from the new owners saying the club was closed in 2009. We're hoping to get members back in 2011 and start up again. So the club was closed for a good period of time. And the previous club, however, never had an enforcement action and had events for nonmember parties, including parties by the village. The ordinance didn't exist, Judge. It didn't exist until 2001. And the amendments didn't exist until 2009. The club that was on that site had many events for nonmembers, including parties hosted by the village. Is that not true? There's no direct evidence. I suspect off the record that probably, yes, that did occur, not to the extent it's alleged. But, again, it's irrelevant to the issue of was this appellant complying with the statute when it started to have nonmember events. In the Article 78 injunctive proceeding hearing, they submitted a list that showed that approximately over 50% of the events that were occurring at that club were nonmember events, far beyond what the statute said they were allowed to do. That's really the problem. They were just excessive. Let me come back to one issue. Yes, Judge. That Mr., what's his name, who did the inspections?  Scirocco. Testified, or I think he testified, he must have been in the other proceeding, that the building inspector suggested that it be issued. Is that correct? That certainly is the allegation in the complaint, and I believe that was the testimony, Judge. I don't recall it exactly, but I believe on cross-examination that is what he said. The building inspector was one of the recipients of the coalition's many letters. Yes, that's correct. All right. Thank you. Thank you. Mr. Cooper, you've reserved two minutes. Overall, I think the response is you've heard one view of the facts and another view of the facts, but the issue is, is that on a motion to dismiss, the issue is whether there's a plausibility, and whether one side is plausible and the other side is plausible, at this point, it was inappropriate for the complaint to be dismissed so that discovery can move forward and we can actually put meat to those bones.  Obtaining that relief from us. Describe to us what the future holds. I believe establishing that the intent of the village in issuing the notices of violation and all of the other facts alleged was not to enforce zoning or some good faith, but, in fact, to prohibit Hampshire from pursuing the rezoning petition. And one thing I want to make clear, because I don't think Mr. Granger's answer was actually accurate to the question. The question that was asked of me is, is the rezoning petition still active? No. The rezoning petition was rejected twice by the village. If the village board doesn't consider it, it's not active. What is active is an as-of-right application under the R20 zoning, which Hampshire, it's their only other choice. If we can't pursue this rezoning, then we have to go under the existing zoning, and we're seeking what's called a cluster subdivision. That's a very long process. You're seeking to comply with the R20 and build houses? On the golf course. Now, unfortunately, the rezoning we submit was more consistent with the comprehensive plan because it would have conserved all of the golf course and all of the environmentally sensitive features. It would have been, as counsel said, a five-story building in an area that's flat. Well, I would disagree with that characterization. However, under New York State law, the secret process would bear that out. And if there's an undesirable impact, then they would have to mitigate it. Why haven't you submitted the EIS? Because if you look at the scoping document under the EIS, it's very thick. There are a lot of studies that have to go into this. We are actively preparing the EIS. It is taking a long time, and I know at least Mr. Steinman is very excited to review it. It will be there, but it's taking our consultants a while. We're not dragging our feet. Believe me, I have to actually go back and now start reviewing more sections. But that's under the as-of-right zoning. That's not what's alleged in the complaint. We're talking about the rezoning, which was rejected twice. Thank you, Mr. Chairman. Thank you. We'll reserve the decision, and we are adjourned. Court is adjourned.